### FADDIS v. MASON.

(Circuit Court of Appeals, Eighth Circuit. April 27, 1903.)

No. 1,823.

**1. SALES—BREACH OF CONTRACT—DAMAGES—QUESTIONS FOR JURY.**

Where, in an action for breach of a contract for the sale of cattle and to recover money advanced thereon, defendant contended that plaintiff had broken his contract by refusing and failing to accept the cattle on the day he directed they should be delivered, by reason whereof defendant suffered loss, while plaintiff contended that he did not direct a delivery as alleged, and that defendant had recognized plaintiff's right to a delivery of the cattle after the day specified, and there was evidence to support the contentions of both parties, whether plaintiff had failed to receive the cattle as he was bound to do, and whether defendant had waived his right to treat the contract as broken thereby, were questions for the jury, and it was therefore error for the court to charge, as a matter of law, that plaintiff was entitled to the money advanced, and to submit only the question whether plaintiff was not entitled to recover damages by defendant's refusal to deliver.

**2. SAME.**

Where a contract for the sale of cattle required the seller to deliver all of the heavy cattle, numbering 350, on or about September 1st, and the balance after September 15th, at the buyer's option, and on delivery of the first lot the buyer directed delivery of the remainder on a specified day thereafter, his failure to receive the cattle on that day constituted a breach of the contract for which the seller was entitled to damages.

In Error to the Circuit Court of the United States for the District of Nebraska.

Ulysses G. Mason, the defendant in error, brought an action against Robert M. Faddis, the plaintiff in error, to recover damages in the sum of $2,840 for nonperformance of an agreement for the sale of certain cattle. Mason, the plaintiff below, alleged, in substance, that on August 21, 1899, Faddis executed an agreement in the language following:

"Wood Lake, Neb., Aug. 21st, 1899.

"I have this day sold to U. G. Mason of Marshall, Mo., all my two and three year old cattle, except such cattle as are unmerchantable, * * * at four dollars and twenty-five cents per hundred ($4.25) less fifty cents per head. Said cattle to be driven from pasture where they are now being held, and weighed at the town of Wood Lake, and shrank three per cent. I have received on contract two thousand dollars ($2,000), and am to deliver all the heavy and fleshy cattle, numbering about three hundred and fifty, on or about Sept. 1st, balance after Sept. 15th, Mason's option.          R. M. Faddis."

The plaintiff alleged that on the execution of the contract he paid to Faddis $2,000 as a part of the purchase price of the cattle; that on September 1, 1899, Faddis delivered to him all of the heavy or fleshy cattle covered by the contract, amounting to 364 head, which cattle were then and there paid for at the rate mentioned in the contract; that on or about October 7, 1899, Faddis delivered to the plaintiff 300 head of the remaining cattle covered by the contract, and that the plaintiff paid the defendant in full at the rate specified for the cattle so delivered; that after the second delivery as aforesaid there remained in the defendant's hands, of the cattle so as aforesaid agreed to be sold and delivered, 280 head, and that the defendant also had in his hands the sum of $2,000 paid on account when the contract was executed; that on November 1, 1899, and on December 25, 1899, the defendant refused to deliver said 280 head of cattle, and refused to pay back to the defendant the sum of $2,000, which the plaintiff advanced as a part of the purchase price when the contract was made; and that the defendant had failed and refused to further execute the contract by delivering further cattle. He further alleged that the market value of cattle had increased materially above the price specified in the contract; that at the time and place specified for the delivery of the cattle they would have been worth at least $3 per head more than the purchase price would have amounted to, according to the terms of the contract, and that the plaintiff had been damaged in the sum of $840 in addition to the sum of $2,000 that had been paid on account; and he accordingly demanded a judgment against the defendant in the sum of $2,840, with interest thereon at the rate of 7 per cent. per annum from November 1, 1899.

The defendant below, in his answer, admitted the execution of the aforesaid contract, except the last clause thereof, which he insisted was in the following language: "I have received on contract two thousand dollars, $2,000.00, and am to deliver all the heavy and fleshy cattle numbering about three hundred and fifty on or about Sep. 1, balance after Sep. 15, *to Oct. 1*, Mason's option." The defendant also admitted the two deliveries of cattle mentioned in the petition, and that he had received full payment for the cattle so delivered. Touching the nondelivery of the 280 head of cattle covered by the contract, the defendant below alleged, in substance, the following facts: That the second delivery of 300 head of cattle took place on October 4, 1899; that on said day the plaintiff directed defendant to bring the rest of the cattle from his ranch to Wood Lake, and have them there ready for delivery on October 11, 1899; that in compliance with such directions the defendant did drive said 280 head of cattle to Wood Lake, Neb., and had them there ready for delivery on October 11, 1899; that the plaintiff failed to meet the defendant and to receive the cattle on that day, as he had agreed to do, but sent a request to the defendant to hold the cattle at Wood Lake for one week; that the defendant caused the cattle to be weighed, and did hold them at Wood Lake until October 29, 1899, during all which time the plaintiff failed and refused to receive the cattle; and that by reason of such failure and refusal to receive and pay for the cattle the defendant was compelled to retain them in his possession. The defendant further alleged, in substance, that on October 1, 1899, when the cattle should have been received by the plaintiff and for a long time thereafter, the market price of the cattle was far below the price specified in the contract; that, by reason of the plaintiff having received 664 head of the best and most marketable cattle out of 944 head agreed to be purchased, the cattle left in the defendant's possession were of an inferior quality, and were not worth the market price of cattle of the same age, nor worth as much when sold separately upon the market as when sold with the more fleshy and more valuable cattle which the plaintiff had received; and that, by virtue of the plaintiff's failure to receive and pay for the 280 head of cattle as and when he should have done, the defendant below had been damaged in the sum of $3,000; and that, deducting therefrom the sum of $2,000 in the defendant's hands, there was still due and owing to him from the plaintiff the sum of $1,000.

In his reply to the aforesaid answer the plaintiff admitted that the defendant did drive to Wood Lake, on October 11, 1899, all of the cattle which the contract required to be delivered to him, but he averred that the cattle were not so driven to Wood Lake at his request. He further averred that the

defendant was estopped from asserting that the plaintiff was not entitled to a delivery of the 280 head of cattle after they had been driven to Wood Lake, Neb., and then driven back to his ranch, for the reason that subsequent to the return of the cattle to the defendant's ranch he had repeatedly promised to deliver said cattle to the plaintiff, and that the plaintiff had repeatedly demanded the delivery of said cattle, and that in response to such demands the defendant had repeatedly asked the plaintiff to postpone the time of delivery of the cattle, and that the defendant had at no time claimed that the plaintiff had violated the terms of his agreement in not receiving the cattle at an earlier period until after the plaintiff had made repeated demands for their delivery.

On the trial below, under pleadings presenting the aforesaid issues, there was a verdict in favor of the plaintiff in the sum of $2,346.62. The defendant below has brought the case to this court for review on a writ of error.

A. M. Morrissey and James B. Sheean, for plaintiff in error.

T. J. Mahoney (J. A. C. Kennedy, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

From the foregoing statement it will be seen that under the pleadings there was no substantial controversy between the parties concerning the terms of the contract or the number of cattle that had been delivered or the payments that had been made on account or concerning the number of cattle that had not been delivered. The substantial issues of fact arising under the pleadings were whether the plaintiff below had failed to accept and pay for the last lot of cattle that were to be delivered, at the time and place that had been fixed by the plaintiff himself for their delivery; and whether, if he had done so, the defendant below had waived the default on the part of the purchaser by promising a delivery after the purchaser was in default and by requesting him to name some other time for the delivery. The testimony on these points was somewhat conflicting. There was abundant evidence to sustain the defendant's contention that the plaintiff fixed October 11, 1899, as the date when he would accept the last lot of cattle, to wit, 280 head; that the cattle were driven to the place of delivery designated by the purchaser, to wit, Wood Lake, Neb.; that they were kept there one week after October 11, 1899, at the plaintiff's request, and even longer—that is to say, until October 29, 1899; and that because the plaintiff failed to appear and accept the stock in the meantime they were driven back by the defendant a distance of some 40 miles from Wood Lake to his ranch.

On the other hand, there was some testimony to the effect that the plaintiff did not direct a delivery of the last lot of cattle on October 11, 1899, and that there was a verbal understanding between the buyer and the seller about October 4, 1899, that the residue of the cattle were not to be delivered until the purchaser had succeeded in disposing of the 300 head that were delivered to him on October 4, 1899. There was some little testimony also tending to show that the defendant had recognized the plaintiff's right to a delivery of the cattle subsequent to October 29, 1899, after they had been driven back to the de-

fendant's ranch. The crucial questions in the case, therefore, were, as above stated, whether the plaintiff had failed to receive the cattle when he was bound to do so and had thus broken his contract, and whether the defendant had done anything, after such default, that was tantamount to a waiver of his right to complain of the breach and to treat the contract as broken.

The learned trial judge, as we think, withdrew both of these questions from the consideration of the jury, holding, as we construe the charge, either that the plaintiff had not failed to take and pay for the last lot of cattle as and when he should have done, or that the defendant, by his conduct, had waived such default on the part of the plaintiff, if he was in fact guilty of a default. He instructed the jury, in substance, that the plaintiff was entitled to recover the $2,000 which he had paid on account of the purchase price, and the only question submitted to the jury was whether, in addition to the recovery of this sum and interest, the plaintiff below was not entitled to recover something more because the cattle had risen in value after the defendant refused a delivery. In other words, the trial court appears to have decided, as a matter of law, that the defendant below was in default, and must restore the $2,000 which he had received, besides paying, as damages, a sum sufficient to cover any increase in the market value of the cattle after the contract was broken.

To that part of the charge which in effect advised the jury that the evidence which had been introduced by the defendant disclosed no defense, and that the plaintiff was entitled to recover, the defendant below took several exceptions, and the exceptions so taken must be sustained. The concluding clause of the contract gave the purchaser the right to determine when deliveries of cattle should be made after September 15, 1899, except as to the 350 head that were to be delivered on or about September 1st. The proof tended very strongly, if not conclusively, to show that Mason exercised this option by directing the delivery of 300 head of cattle on October 1st, and that when he accepted these cattle on October 4th he directed Faddis to deliver the remaining 280 head on October 11, 1899, and that Faddis complied with this request, driving the cattle some 40 miles from his ranch to Wood Lake, where they were to be delivered. The failure of the buyer to appear at Wood Lake and receive the cattle at the appointed time certainly placed him in default, and rendered him liable in damages to the defendant, if any such damages were sustained. This default may possibly have been waived by the defendant, but it could only have been waived by words or a course of conduct such as would warrant an inference that he intended to waive the default and restore the plaintiff to the position which he had lost; and, if such an inference was justifiable, it could only have been drawn by a jury. On the state of facts disclosed by this record the court could not say, as a matter of law, either that the plaintiff was not guilty of a breach of contract in failing to accept the 280 head of cattle on October 11, 1899, or that, if guilty of such a breach of contract, it had been waived by the defendant.

The result is that the judgment below, for errors in the charge, must be reversed, and the cause remanded for a new trial.